UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LAVON RAWLS,**

       **Plaintiff,**

v.                                                         **Case No:   6:19-cv-1541-Orl-EJK**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

_____/

**ORDER[1]**

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIBs"). The Court has reviewed the record, including Administrative Law Judge ("ALJ") Valencia Jarvis' February 22, 2018 decision (the "Final Decision"), the administrative record, and the joint memorandum of the parties. After due consideration, the Court determines that the Commissioner's Final Decision is due to be affirmed.

**I.  PROCEDURAL BACKGROUND**

On December 12, 2012, Plaintiff filed an application for DIBs ("Original Claim"), alleging disability due to complications from prostate cancer surgery (prostate removal), multiple surgeries, hiatal hernia, hypertension, nerve damage in the right wrist, lower back pain, and colitis. (Tr. 197, 238.) In the application, Plaintiff indicated that his alleged onset date of disability was July 20, 2010. (Tr. 199.) Plaintiff's Original Claim was denied initially and upon reconsideration. (Tr. 143–

---

[1] On November 6, 2019, both parties consented to the exercise of jurisdiction by a United States magistrate judge. (Doc. 11.) The case was referred by an Order of Reference for all further proceedings on November 19, 2019. (Doc. 13.)

148, 150–155.) After an administrative hearing (Tr. 75–119), the ALJ issued a decision finding Plaintiff not disabled (Tr. 20–43). The Appeals Council denied Plaintiff's request for review. (Tr. 4–10.)

Plaintiff sought judicial review of his claim in the United States District Court for the Middle District of Florida. While his action was pending, Plaintiff filed a subsequent claim for DIBs ("Subsequent Claim") on July 21, 2015, with an alleged onset date of January 11, 2014. (Tr. 1313–1321.) The state agency issued a favorable decision on the Subsequent Claim, finding that Plaintiff was disabled from January 11, 2014. (Tr. 1182.) Further, the Court reversed the Commissioner's final decision with regard to Plaintiff's Original Claim. *Rawls v. Comm'r of Soc. Sec.*, No. 6:15-cv-755-Orl-GJK, 2016 WL 4272201, at *7 (M.D. Fla. Aug. 15, 2016). On remand, the Appeals Council noted that the court remanded Plaintiff's Original Claim for further review and the state agency issued a favorable decision on the Subsequent Claim. (Tr. 1182.) As such, the Appeals Council indicated that the ALJ's review would be limited to the period prior to January 11, 2014. (*Id.*)

Upon a second review, the ALJ once again found Plaintiff was not disabled from July 20, 2010 to January 10, 2014 (Tr. 1060–1091), and the Appeals Council denied Plaintiff's request for review (Tr. 1053–1058). Plaintiff now seeks judicial review of the Commissioner's Final Decision pursuant to 42 U.S.C. § 405(g) (Doc. 1).

## II.   STANDARD

An individual is considered disabled and entitled to disability benefits if the person is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(B). In evaluating a disability claim, the Commissioner must use the following five-step sequential analysis:

1. If the applicant is working, the claim is denied.

2. If the impairment is determined not to be severe—*i.e.*, if the impairment or combination of impairments does not significantly limit the individual's physical or mental ability to do basic work—then the claim is denied.

3. If the impairment or combination of impairments meets or medically equals one of the specific impairments listed in the regulations, then the claimant is entitled to disability benefits. If not, then the Commissioner proceeds to step four.

4. If the claimant has the residual functional capacity ("RFC") to perform past work, then the claim is denied.

5. If the claimant cannot perform past work, then the Commissioner must determine whether there is substantial work in the economy that the claimant can perform. If so, the claim is denied.

*See* 20 C.F.R. §§ 404.1520–404.1576.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 20, 2010, to January 10, 2014. (Tr. 1066.) At step two, the ALJ found that Plaintiff had the following severe impairments: prostate cancer status post prostatectomy, hernia, and degenerative disc disease of the cervical, thoracic, and lumbar spine. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1526. (Tr. 1070.) Before proceeding to step four, the ALJ determined

that Plaintiff had the RFC to perform the full range of light work, "except [Plaintiff] may perform unlimited pushing and pulling." (Tr. 1071.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). Furthermore, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). At step four, the ALJ concluded that Plaintiff could not return to his past relevant work as a concrete finisher, manager at a dry cleaner, and groundskeeper (Tr. 1081.) The ALJ concluded the analysis at step five, finding that, in light of Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 1081–1082.) Such jobs are cashier, fast food worker, and mail clerk. (Tr. 1082.)

### III. SCOPE OF JUDICIAL REIVEW

On judicial review, a Court may determine only whether the ALJ correctly applied the legal standards and if the ALJ's findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir.1997)). A Court may "not reweigh the evidence or substitute [its] own judgment for that of the agency." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 683 (11th Cir. 2019) (citing *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

The Eleventh Circuit defines "substantial evidence" as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 774 (11th Cir. 2019) (citing *Lewis*, 125

F.3d at 1439). A Court determines whether substantial evidence exists by considering evidence that is both favorable and unfavorable to the Commissioner's decision. *Lynch v. Astrue*, 358 F. App'x 83, 86 (11th Cir. 2009). "Even if the evidence preponderates against the [Commissioner's] findings, [the Court] must affirm if the [Commissioner's] decision is supported by substantial evidence. *Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017) (citing *Crawford*, 363 F.3d at 1158–59).

## IV.    DISCUSSION

Plaintiff raises three issues on appeal: first, whether the ALJ erred by assigning "little weight" to the opinions from his treating physician and examining physiatrist (Doc. 19 at 23); second, whether the ALJ properly evaluated Plaintiff's subjective complaints of pain (*Id.* at 36); and third, whether the ALJ was properly appointed pursuant to the Appointments Clause of Article II of the United States Constitution (*Id.* at 42). For the reasons set forth below, the Court finds that all three arguments fail, and the Commissioner's Final Decision is due to be affirmed.

### A. The ALJ Properly Assigned "Little Weight" to the Treating Physician's and Examining Physician's Opinions

Plaintiff argues that the ALJ erred by affording "little weight" to the opinions of Plaintiff's treating physician, Nadine Wright, M.D., and examining physiatrist, James Shea, M.D. (Doc. 19 at 23.) Specifically, Plaintiff argues that because the ALJ rejected these opinions based simply on their form (a "check box"/"fill-in-the-blank" form) instead of their substance, the opinions were improperly rejected. (*Id.* at 24.) Plaintiff also argues that his testimony on performing activities of daily life ("ADLs") should not have been a ground for discounting Drs. Wright's and Shea's opinions. (*Id.* at 25.) In response, the Commissioner argues that the ALJ provided good cause for discounting these doctors' opinions, and thus did not commit reversible error. (*Id.* at 29.) The Court agrees with the Commissioner.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Sec. Sec.* 631 F.3d 1176, 1178–79 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 404.1527(c).[2]

"The ALJ must give a treating physician's opinion substantial or considerable weight unless good cause is shown to the contrary.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Id.* (citing *Winschel*, 631 F.3d at 1179). The ALJ may also look to the length of the treatment relationship and the frequency of examination in deciding the weight to give any medical opinion. 20 C.F.R. § 404.1527(c)(2)(i); *see also Heppell-Libsansky v. Comm'r of Soc. Sec.*, 170 F. App'x 693, 698 (11th Cir. 2006) (acknowledging that treating physician was not entitled to great weight since the doctor only saw the claimant twice after the alleged onset date).

---

[2] Although the Commissioner has adopted new regulations for considering medical opinions for claims filed on or after March 27, 2017, Claimant's application for benefits was filed in 2014, so § 404.1527 applies here.

Section 404.1527 provides that "because non[-]examining sources have no examining or treating relationship with [a claimant], the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 404.1527(c)(3). Further, the opinion of a one-time examiner is not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).

On October 1, 2012, Dr. Wright completed a Multiple Impairment Questionnaire (hereinafter, "Dr. Wright's Opinion") on behalf of Plaintiff. (Tr. 735–42.) Therein, Dr. Wright opined that in an 8-hour workday, Plaintiff can sit for one hour and stand/walk for one hour, and thus indirectly asserted that Plaintiff cannot work for an entire 8-hour workday. (Tr. 737.) Plaintiff must also get up every 12 to 30 minutes and cannot move around for more than 5 to 10 minutes at a time. (Tr. 737–38.) Plaintiff cannot carry anything, but can occasionally lift, at most, 5 pounds. (Tr. 738.) Dr. Wright opined that due to Plaintiff's chronic neck pain and the fact that "the radicular upper extremity symptoms [would be] exacerbated by repetitive lifting and reaching," Plaintiff was "essentially precluded" from using his upper extremities in an 8-hour workday. (*Id.*) In fact, Plaintiff's symptoms would be exacerbated if he worked in a competitive work environment. (Tr. 740.) Moreover, his "pain, fatigue or other symptoms" are severe enough to constantly interfere with his attention and concentration. (*Id.*) Dr. Wright found that no emotional factors play into Plaintiff's ability to work, yet he was incapable of low stress work because his pain induced functional limitations, which resulted in an "inability to cope." (*Id.*) Overall, Dr. Wright found that Plaintiff's impairments would result in good days and bad days, and he would miss work more than three times a month. (Tr. 741.)

Dr. Shea also completed a Multiple Impairment Questionnaire (hereinafter, "Dr. Shea's Opinion") on August 29, 2013. (Tr. 972.) Therein, Dr. Shea opined that Plaintiff was "poor for

future improvement." (*Id.*) Like Dr. Wright, Dr. Shea opined that Plaintiff can sit for only one hour and stand/walk for one hour. (Tr. 974.) Plaintiff must get up every 5 to 10 minutes, cannot move for more than 30 minutes at a time, and needs to take unscheduled breaks almost continuously (Tr. 974–75, 977.) Thus, Dr. Shea opined that Plaintiff would be on break more than working and miss work more than three times a month. (Tr. 977–78.) Plaintiff can, at most, lift and carry 5 pounds, and Dr. Shea noted that Plaintiff ambulated with a cane in his right hand. (Tr. 975.) Like Dr. Wright, Dr. Shea also found that no emotional factors play into Plaintiff's ability to work, yet Plaintiff was incapable of low stress work due to his overwhelming pain. (Tr. 977.)

Contrary to what Plaintiff asserts, the ALJ did not discount Drs. Shea's and Wright's Opinions simply because of their format and Plaintiff's testimony on his ability to perform ADLs. Among other reasons, the ALJ assigned little weight to both opinions because, according to the ALJ, they were inconsistent with the record. (Tr. 1077.) Upon review, the Court finds that this was a good cause basis for discounting Drs. Shea's and Wright's Opinions.

Citing to specific portions of the record, the ALJ explains why he found Drs. Shea's and Wright's Opinions to be inconsistent with the record. First, the ALJ noted that both opinions were inconsistent with the "negative straight leg raises documented and the characterizations of [Plaintiff's] gait as normal and balanced." (Tr. 1078.) He then noted that the mental status examinations showed that Plaintiff "retains normal attention and concentration." (*Id.*) Moreover, the ALJ pointed to Plaintiff's wife's reports that Plaintiff "tolerates stress well." (*Id.*) The ALJ also cited to Plaintiff's testimony on his ability to perform ADLs, which revealed that Plaintiff had an active lifestyle. (*Id.*)

The ALJ found even more inconsistencies between Dr. Wright's Opinion and the record. As to the cited manipulative abilities in Dr. Wright's Opinion, the ALJ points to a statement from

Plaintiff's neurologist, authored a few months before Dr. Wright's Opinion, indicating that Plaintiff's dexterity was intact. (*Id.*) Finally, the ALJ found that the opinion that Plaintiff experienced sedation from his prescription Flexeril was "inconsistent with evidence establishing that [Plaintiff] had no medication side effects." (*Id.*) Because the ALJ articulated a good-cause basis for rejecting both Dr. Wright's Opinion and Dr. Shea's Opinion, the latter of which is not entitled to any deference, the Court finds that the ALJ did not err by assigning little weight to these opinions.

### B. The ALJ Properly Evaluated Plaintiff's Subjective Allegations

Plaintiff argues that the ALJ's rejection of Plaintiff's subjective complaints was not supported by substantial evidence, amounting to reversible error. (Doc. 21 at 38.) Specifically, Plaintiff asserts that the ALJ improperly placed undue weight on Plaintiff's ability to perform ADLs when evaluating the subjective complaints. (*Id.*) Relying on 20 C.F.R. § 404.1529(c)(2), Plaintiff also asserts that the ALJ cannot rely solely on objective medical evidence when rejecting Plaintiff's subjective complaints. (*Id.*) In response, the Commissioner argues the ALJ did not err when evaluating Plaintiff's subjective complaints. (*Id.* at 40.) Instead, the ALJ relied upon Plaintiff's treatment history, medications, *as well as* his ability to perform ADLs. (*Id.* at 41.) Upon consideration, the Court finds that the ALJ's rejection of Plaintiff's subjective complaints was supported by substantial evidence.

Social Security Ruling ("SSR") 16-3p and 20 C.F.R. § 404.1529(c) provide guidance on how an administrative law judge is to evaluate the subjective complaints of a claimant. SSR 16-3p provides that the "subjective symptom evaluation is not an examination of an individual's character," but instead a two-step evaluation of the evidence at hand. SSR 16-3p, 2017 WL

5180304 *2–3 (Oct. 25, 2017).[3] First, the administrative law judge "determine[s] whether the individual has a medical determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* at *3. Then, the administrative law judge "evaluate[s] the intensity and persistence of an individual's symptoms . . . and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

Section 404.1529(c) provides that an administrative law judge is to "consider all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [the] symptoms affect [the claimant]." 20 C.F.R. § 404.1529(c)(1). It also provides that medical opinions can be relied upon when evaluating a Plaintiff's subjective complaints. (*Id.*) Subsections (c)(2) and (c)(3) further specify how the administrative law judge is to evaluate the subjective complaints.

As Plaintiff correctly points out, an administrative law judge may not reject a claimant's subjective complaints solely because the objective medical evidence does not substantiate the complaints. 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your . . . symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). This regulation instructs administrative law judges to "carefully consider any other information [a claimant] may submit about [his] symptoms." *Id.* § 404.1529(c)(3). It also provides the following six non-exhaustive factors when evaluating the subjective complaints: a claimant's daily activities; "the location, duration, frequency, and intensity" of other symptoms;

---

[3] "If a court finds reversible error and remands a case for further administrative proceedings after March 28, 2016, the applicable date of Rule 16-3p], we will apply this ruling to the entire period at issue in the decision we make after the court's remand." SSR 16-3, 2017 WL 5180304 *13 n. 27.

"precipitating and aggravating factors;" "the type, dosage, effectiveness, and side effects" of a claimant's medication taken to alleviate his symptoms; any other treatment for alleviating symptoms; and measures a claimant used to alleviate the symptoms, such as lying down. *Id.* The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

In the instant case, the ALJ noted that Plaintiff testified that constant pain in his right wrist, back, neck, and legs prevented him from working. (Tr. 1071.) Plaintiff also testified that he was unable to turn or hold up his neck, underwent surgery for his neck conditions, and sleeps with a cervical collar. (*Id.*) As to leg and back pain, Plaintiff testified that the pain radiated down to his ankle, and the pain was aggravated by sitting up or bending over. (*Id.*) Plaintiff also testified that he attempted to treat his pain by undergoing physical therapy, using ointments, lying down, and taking medication, but these did little to alleviate his pain. (Tr. 1071–72.) In the Pain Questionnaire, Plaintiff also noted that he experienced pain due to his hernia. (Tr. 1072.)

At step one of the subjective complaint evaluation, the ALJ found that Plaintiff's "impairments could reasonably be expected to produce the alleged symptoms." (Tr. 1072.) However, the ALJ ultimately concluded that Plaintiff's subjective complaints were not consistent with the medical evidence and other evidence of record. (*Id.*) Without repeating the ALJ's lengthy Final Decision, the Court finds that the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence.

In the Final Decision, the ALJ meticulously recounted Plaintiff's vast objective medical history as it pertained to his neck, back, leg, and hernia related pain. (Tr. 1072–1076.) The ALJ also noted that Plaintiff could, "notwithstanding his severe physical impairments, . . . take care of his chickens, drive, manage his personal care independently, pick children up from school, prepare

meals, [do] laundry and light cleaning, drive, grocery shop once a week, and attend church." (Tr. 1077.) The ALJ also relied upon several medical opinions when evaluating the subjective complaints. As discussed *supra*, the ALJ discounted Drs. Shea's and Wright's Opinions. However, he assigned great weight to the state agency examining physicians, finding their opinions to be consistent with the medical record and Plaintiff's reported ADLs. (Tr. 1079.) Finally, the ALJ also relied upon non-medical information from Plaintiff's wife. His wife provided a report to which the ALJ ultimately afforded great weight because it was consistent with Plaintiff's reported ADLs. (Tr. 1079.)

Plaintiff's objective medical record, ability to perform ADLs, the medical opinions of record, and the third-party reports from Plaintiff's wife and former employer were all pieces of information that the ALJ could and did rely upon when evaluating Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Because the ALJ's finding was clearly articulated and supported by substantial evidence, the Court finds that there was no reversible error in this regard.

### C. Plaintiff Waived the Appointments Clause Challenge

Plaintiff raises an Appointments Clause challenge, arguing that because Nancy Berryhill, as a staff member, appointed the ALJ who heard Plaintiff's application, the ALJ unconstitutionally assumed his position. (Doc. 21 at 42.) In support, Plaintiff cites to *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2053 (2018), in which the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and are thus subject to the Appointments Clause. (*Id.*) The Supreme Court also stated that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief." *Lucia*, 138 S. Ct. at 2055.

The Commissioner notes, and Plaintiff concedes, that this is the first time she is raising an Appointments Clause challenge. (Doc. 21 at 44, 48.) Nevertheless, Plaintiff contends that her Appointments Clause challenge is not untimely, relying on *Sims v. Apfel*, 530 U.S. 103, 112 (2000). While the Eleventh Circuit has yet to decide whether *Lucia* should apply to Social Security proceedings, courts in this District have unequivocally found that a plaintiff waives his or her Appointments Clause challenge if it was not first raised at the administrative level. *See Ramazetti v. Comm'r of Soc. Sec.*, No. 8:19-cv-260-T-MAP, 2020 WL 428950, at *8 (M.D. Fla. Jan. 28, 2020) (recognizing that other Courts from the Middle District of Florida have rejected a plaintiff's *Sims*-timeliness argument and finding that the constitutionality challenge was untimely); *Huebert v. Comm'r of Soc. Sec.*, No. 2:18-cv-761-FtM-MAP, 2019 WL 5206065, at *5 (M.D. Fla. Oct. 16, 2019) (explaining that *Sims* was not applicable to the facts and finding that the plaintiff waived his Appointments Clause argument); *Valle-Roman v. Comm'r of Soc. Sec.*, No. 6:18-cv-1158-Orl-TBS, 2019 WL 1281171, at *2 (M.D. Fla. Mar. 20, 2019) (finding that "[a]ny challenge to the constitutional validity of the ALJ's appointment that was not first raised at the administrative level is rejected as untimely") (citations omitted); *Rodriguez v. Comm'r of Soc. Sec.*, No. 6:18-cv-1375-Orl-41GJK, 2019 WL 1644243, at *3 (M.D. Fla. Feb. 5, 2019), *report and recommendation adopted*, 2019 WL 1643299 (M.D. Fla. Apr. 16, 2019) (rejecting the plaintiff's *Sims* argument and finding that the plaintiff should have raised the argument at some point during the administrative process).

In light of this authority, the Court finds that Plaintiff's Appointments Clause challenge is untimely.

V.  **CONCLUSION**

Upon consideration of the foregoing, it is **ORDERED AND ADJUDGED** that:

1. The Commissioner's final decision in this case is **AFFIRMED**; and

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on October 26, 2020.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record